IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **UNDER SEAL** |
| v. | ) | |
| | ) | No. 1:15-CR-102 |
| Amin al-Baroudi, | ) | |
| a/k/a "Abu al-Jud," | ) | Conspiracy to Violate IEEPA and |
| | ) | U.S. Sanctions Against Syria |
| Defendant. | ) | 50 U.S.C. §§ 1702 & 1705 |
| | ) | (Count One) |
| | ) | |
| | ) | Conspiracy to Defraud the United States |
| | ) | 18 U.S.C. § 371 |
| | ) | (Count Two) |
| | ) | |
| | ) | Willful Violation of IEEPA and |
| | ) | U.S. Sanctions Against Syria |
| | ) | 50 U.S.C. § 1705 |
| | ) | (Count Three) |
| | ) | |
| | ) | Willful Violation of IEEPA and |
| | ) | U.S. Sanctions Against Syria |
| | ) | 50 U.S.C. § 1705 |
| | ) | (Count Four) |
| | ) | |
| | ) | Forfeiture Notice |
| | ) | |

FILED
IN OPEN COURT

APR - 9 2015

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

INDICTMENT

April 2015 Term – At Alexandria

GENERAL ALLEGATIONS

At all times material to this Indictment:

1.  Defendant AMIN AL-BAROUDI is a Syrian-born naturalized U.S. citizen.

2.  Ahrar al-Sham is an armed insurgent group in Syria, consisting of a coalition of

Islamist and Salafist units, whose stated goal is to overthrow the Assad government and install an

Islamic state in Syria. Ahrar al-Sham frequently fights alongside Jabhat al-Nusrah, which has been designated by the United States as a Foreign Terrorist Organization and operates as al Qa'ida's official branch in Syria.

3.    At all times relevant to this Indictment, BAROUDI did not apply for, receive, or possess a license or authorization from the United States Department of Commerce to export goods, technology, or services, of any description to Syria.

*The International Emergency Economic Powers Act and the*
*Syria Accountability and Lebanese Sovereignty Restoration Act*

4.    The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, authorizes the President of the United States ("President") to impose economic sanctions on a foreign country in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat. Pursuant to the authority under the IEEPA, the President and the executive branch have issued orders and regulations governing and prohibiting certain transactions with Syria by U.S. persons or involving U.S.-origin goods.

5.    The President signed the Syria Accountability and Lebanese Sovereignty Restoration Act of 2003 (Pub. L. 108-175, codified as a note to 22 U.S.C. § 2151) ("the SAA") in December 2003. Section 5(a)(1) of the SAA requires the President to prohibit the export to Syria of all items on the Commerce Control List (15 C.F.R. Part 774) ("CCL") and to impose two or more of six additional sanctions, as set forth in Section 5(a)(2)(A)-(F) of the SAA. The CCL is contained within the Export Administration Regulations (15 C.F.R. Parts 730-774) ("the EAR") and categorizes dual-use goods controlled for export by the Department of Commerce. Dual-use goods are products and technologies normally used for civilian purposes which may have military applications.

2

6.      On May 11, 2004, the President issued Executive Order 13338, declaring that "the actions of the Government of Syria, in supporting terrorism, continuing its occupation of Lebanon, pursuing weapons of mass destruction and missile programs, and undermining United States and international efforts with respect to the stabilization and reconstruction of Iraq, constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." The Executive Order imposes U.S. sanctions against Syria, including a broad prohibition on the export and re-export to Syria of items subject to the EAR, and provides that "the Secretary of Commerce shall not permit the exportation or re-exportation to Syria of any product of the United States," except for food and medicine, and that "[n]o other agency of the United States Government shall permit the exportation or re-exportation to Syria of any product of the United States." The Executive Order also prohibits any "transaction by a United States person or within the United States that evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth" in the order.  In accordance with Executive Order 13338, the U.S. Department of Commerce, Bureau of Industry and Security (DOC/BIS), implemented sanctions on Syria by issuing General Order No. 2 to Supplement No. 1 to Part 736 ("General Order No. 2"), and corresponding regulations (15 C.F.R. Part 746.9), restricting exports and re-exports to Syria of all items subject to the EAR other than food and certain medicine.

7.      With certain limited exceptions not applicable here, U.S. sanctions against Syria prohibit, among other things, the export, re-export, sale, or supply, directly or indirectly, of U.S.-origin goods from the United States or by a United States person wherever located, to Syria or the Government of Syria without prior authorization from the Secretary of State or the Secretary of Commerce.

3

8.     U.S. sanctions against Syria, the SAA, Executive Order 13338, General Order No. 2, and 15 C.F.R. Part 746.9, were all in effect at all times relevant to this Indictment.

## COUNT ONE

### (Conspiracy to Violate the IEEPA and U.S. Sanctions Against Syria)

From at least in our about December 2011 through at least in or about March 2013, the exact dates being unknown to the Grand Jury, defendant AMIN AL-BAROUDI, also known as "Abu al-Jud," who will be first arrested in and first brought to the Eastern District of Virginia, did willfully combine, conspire, confederate, and agree with other U.S. and non-U.S. persons to export and cause to be exported goods from the United States to Syria in violation of the sanctions imposed on Syria by the United States (referenced in paragraphs 4-8), without having first obtained the required authorization from the United States Department of Commerce.

*Objects of the Conspiracy*

The objects of the conspiracy were:

a. To supply and arm Ahrar al-Sham and other rebel groups in Syria with U.S.-origin goods;

b. To acquire U.S.-origin goods from the United States to supply to end-users in Syria;

c. To evade U.S. sanctions against Syria.

*Ways, Manners and Means of the Conspiracy*

. The ways, manner and means by which BAROUDI and other co-conspirators sought to accomplish the objects of the conspiracy included, among other things, the following:

a. BAROUDI and his co-conspirators planned and acted inside and outside of the United States to acquire goods from the United States;

b. BAROUDI and his co-conspirators used Skype, email, and other accounts
(collectively "electronic communications"), telephone calls, and other forms of
communication to communicate with one another and with other individuals;

c. BAROUDI and his co-conspirators purchased U.S.-origin goods from companies
and vendors in the United States;

d. BAROUDI and his co-conspirators traveled with U.S.-origin goods aboard
commercial flights to Turkey;

e. BAROUDI and his co-conspirators transported U.S.-origin goods from Turkey to
Syria;

f. BAROUDI and his co-conspirators caused U.S.-origin goods to be exported from
the United States to individuals and entities in Syria without obtaining a license or
authorization from the United States Department of Commerce.

*Overt Acts*

In furtherance of the above-described conspiracy, and in order to carry out the objects
thereof, defendant BAROUDI and his co-conspirators committed or caused to be committed at
least one of the following overt acts, among others:

(1) On or about December 21 and December 23, 2011, BAROUDI communicated
with T.S., a person BAROUDI learned was associated with Ahrar al-Sham,
and discussed exporting U.S.-origin goods, such as telephones, sniper rifle
scopes, and night vision goggles, to Syria by carrying the goods in a suitcase
on a flight from the United States to Turkey.

(2)     On or about January 11, 2012, BAROUDI communicated with T.S. and offered to help purchase items T.S. wanted exported to Syria, such as rifle scopes and weapon conversion kits, and offered to bring the items to Turkey.

*July 2012 Trip*

(3)     On or about June 10, 2012, BAROUDI purchased from eBay: 3 Sightmark Rifle Premium Laser Bore Sighters, 5 Brass 223 Laser Bore Sighters, 5 7.62 x 39mm Cartridge Red Laser Bore Sighters, 5 Red Mosin Nagant 7.62x54R Laser Bore Sighters, and 15 .22-.50 Red Laser Bore Sighters.

(4)     On or about June 12, 2012, BAROUDI told T.S. that BAROUDI knew someone traveling from the United States to Turkey and asked for a list of items BAROUDI should send with the traveler.

(5)     On or about June 15, 2012, BAROUDI purchased from NRJOptics.com: 10 9x32 Tactical Scopes w/ Range Finder Cross Hairs, an item on the CCL.

(6)     On or about June 17, 2012, BAROUDI purchased from eBay: 1 TrustFire High-power SUPER Bright 8000Lumen 7x CREE XM-L T6 LED Flashlight Torch.

(7)     On or about June 20, 2012, BAROUDI purchased from eBay: 3 Super Tactics CREE LED 300 Lm Flashlight Torch Lamps.

(8)     On or about July 4, 2012, BAROUDI purchased from eBay: 2 Super Tactics CREE LED 300 Lm Flashlights.

(9)     On or about July 17, 2012, R.J. departed Los Angeles International Airport ("LAX") aboard a Turkish Airlines flight to Istanbul, Turkey.

(10)   On or about July 21, 2012, BAROUDI communicated with R.J., who reported that his trip out of the United States went smoothly, that he had delivered some items, and that he still had the remaining items.

(11)   On or about July 21, 2012, BAROUDI communicated with R.J., who asked BAROUDI to obtain a few items R.J. was unable to get before he left the United States and warned BAROUDI to be careful because the items were prohibited from being exported.

(12)   On or about July 23, 2012, BAROUDI communicated with R.J., who discussed delivering items he had brought from the United States and stated that he "gave the things" to T.S. R.J. also stated that he was about to travel from Turkey to Syria and would stay there for a week to ten days.

(13)   On or about July 24, 2012, BAROUDI purchased from Wayfair via Walmart.com: 1 Sightmark Night Raider 3x60 Night vision Rifle scope in Black, an item on the CCL.

(14)   On or about August 15, 2012, BAROUDI communicated with R.J., who stated that he had traveled to Syria.

*February 2013 Trip*

(15)   On or about August 18, 2012, BAROUDI purchased from IJK Sales: 20 3-9x32 IJK Rifle Scopes, an item on the CCL, and 10 Multi-Caliber IJK Laser Boresighters. BAROUDI paid $2,100 USD in cash.

(16)   On or about August 21, 2012, W.B. urged BAROUDI not to support Ahrar al-Sham because, unlike other rebel brigades, Ahrar al-Sham wants to establish an Islamic state in Syria and is dangerous. BAROUDI told W.B. that he had a

8

good relationship with Ahrar al-Sham and that he had purchased about $15,000 USD of material in the last two to three days, most of which he intended to send to Ahrar al-Sham. BAROUDI also stated that while he expected trouble over the fact that he had not obtained an export license, the potential trouble would not stop him.

(17)    On or about August 22, 2012, BAROUDI purchased from Wayfair via Walmart.com: 6 Sightmark Night Raider 3x60 Night Vision Rifle Scopes, an item on the CCL.

(18)    On or about August 26, 2012, BAROUDI purchased one Sightmark 3x60 Gen1 Night Raider Night Vision Riflescope, an item on the CCL, from a vendor named "Wlfpack166" via Amazon.com.

(19)    On or about August 29, 2012, BAROUDI purchased from B&H Photo and Video via its website, www.BHPhotoVideo.com: one Sony Cyber-Shot DSC-HX200V Digital Camera, one Polaroid Helio PLD-5 Digital Night Vision Monocular, one Armasight Orion 5x Gen 1+ N/V Riflescope, an item on the CCL, and one Aries 410 Spartan 5.0x Night Vision Riflescope, an item on the CCL.

(20)    On or about September 11, 2012, BAROUDI purchased one Sony Cybershot DSC-HX100V DSC-HX200V Digital Camera Battery & AC/DC Battery Charger Kit from Big Mike's Electronics via Amazon.com.

(21)    Between on or about October 6, 2012, and October 18, 2012, BAROUDI and G.N., the owner of the eBay store BestPrice4UPeriod, communicated regarding BAROUDI's purchase of a total of twenty Armasight ORION 4X

Gen 1+ Night Vision Rifle Scope Weapon Sights with IR810, an item on the CCL.

(22)   On or about October 6, 2012, BAROUDI purchased one "Pack of 4 Weaver /Picatinny Tan Ladder Quad Rail Covers" via eBay.

(23)   On or about November 25, 2012, BAROUDI purchased thirty (30) 3-9x32 IJK Rifle Scopes, an item on the CCL, from IJK Sales in person at a California gun show.

(24)   From on or about December 17, 2012, to on or about December 19, 2012, BAROUDI purchased via eBay: one 4.5X SUPER Telephoto HD Lens Sony HX100 HX200 DSC-HX200V HX200V With adapter; one Woodland Desert Snow Lot of 3 Camo Netting 5'x8' Ghillie Mesh Camouflage; one 3- Desert Storm Camo Netting 5'x8' USGI Military Ghillie Snipper Mesh Vail; three 9 mm Waterproof LED Lens PS-GL8805 Inspection Cameras; five New NCSTAR Universal Adjustable Barrel Clamp Folding Rifle Bipods; five 270WEA Arbor for .223 Laser Bore Sights; 20 Cartridge Style Red Dot Laser Boresighter Bore 300 20 Gauge Sighters.

(25)   On or about December 18, 2012, BAROUDI purchased five Sightmark Ghost Hunter 1x24 Night Vision Goggle Binocular Kits from Selmark Corporation via BestPrice4UPeriod.

(26)   On or about December 19, 2012, BAROUDI purchased two Bushnell Yardage Pro Sport Laser Rangefinders from Camping Comfortably.

(27)   On or about December 19, 2012, BAROUDI purchased one 9x CREE XM-L T6 LED 11000Lm LED Flashlight Super Bright LED Torch via eBay.

(28)   On or about December 20, 2012, BAROUDI told A.M. that he would travel to Syria and bring equipment with him.

(29)   On or about December 21, 2012, T.S. instructed BAROUDI to travel through Istanbul to Antakya, a town near the Turkish-Syria border and to pack the equipment with clothes, speak English, act like an American, and not declare the equipment, in order to make sure the equipment makes it through customs. BAROUDI stated that he had already acquired over $20,000 USD worth of equipment.

(30)   On or about December 21, 2012, BAROUDI purchased three Uniden BC370CRS 300-channel Clock Radio Police Fire EMS Weather Desktop Scanners via eBay.

(31)   On or about December 24, 2012, BAROUDI purchased via eBay: one Butler Creek Uplula Universal Pistol LULA - Magazine Loader and Unloader – 24222; three Butler Creek LULA Loader/Unloader .223 REM/5.56 NATO 24215; five Butler Creek LULA Loader 7.62x39mm 47/GALIL 24216; and ten Tactical Single Point Sling Rifle Gun Military Sling.

(32)   On or about December 29, 2012 and December 30, 2012, BAROUDI purchased via eBay: one Simmons LRF600 Laser Rangefinder; one Simmons Hunting LRF600 Laser Rangefinder Model 801405C; one 2 pcs BF-UV5R Walkie Talkie 128Ch UHF+VHF DTMF Two-Way Radio, an item on the CCL; two 9mm Waterproof PS-GL8805 Inspection Cameras; two Battery Chargers for 18650 Rechargeable Li-Ion 3.6 & 3.7; two Walkie Talkie 5W 16CH UHF Two-Way Radio BF-888S With 2 pin Speaker Mic, an item on the

11

CCL; three Panasonic HC-V10 Camcorder Video Cameras HD 70x Zoom 2.7
LCD; and three 13000Lm 12x CREE XM-L T6  LED Outdoor Sports LED
Flashlight Torches.

(33)   On or about December 30, 2012, BAROUDI purchased via eBay ten Bright
7W 300-lumen Adjustable Focus CREE Q5 LED Flashlights.

(34)   On or about December 30, 2012, BAROUDI communicated with W.B., who
warned BAROUDI that "Ahrar al-Sham is Qaeda less 25%." BAROUDI
informed W.B. that he would be traveling to Syria soon to deliver more than
$30,000 USD worth of equipment and to train people there how to use it.

(35)   On or about January 3, 2013 and January 6, 2013, BAROUDI purchased via
eBay: three 5pcs -Push Hooks for Paracord Bracelet - 1-1/4'' long; one 550
Paracord parachute cord Mil Spec Type III 7 Strand- 10ft 20ft 50ft 100ft; one
Panasonic HC-V10 Camcorder Video Camera HD 70x Zoom 2.7 LCD; and
one 4-pcs Walkie Talkie BF-UV5R 128CH UHF+VHF DTMF Two-Way
Radio, an item on the CCL.

(36)   On or about January 7, 2013 and January 8, 2013, BAROUDI purchased via
eBay: one 2 x TYT TH-F8 VHF 136-174 Handheld Dual Display FM DTMF
2-Way portable radio, an item on the CCL; and two 4 pcs Walkie Talkie BF-
UV5R 128CH UHF+VHF DTMF Two-Way Radios, an item on the CCL.

(37)   On or about January 13, 2013, BAROUDI purchased via eBay two Panasonic
HC-V10 Camcorders Video Camera HD 70x Zoom 2.7 LCD.

(38)    On or about January 18, 2013, BAROUDI purchased via eBay: one Acu
        Digital Drop Leg Gun Holster Right Handed Fidragon; and one Condor
        Tactical MA44 Triple Stacker Mag Pouch New ACU Digital Rifle Pouch.

(39)    On or about January 19, 2013, BAROUDI created a document entitled
        "available.docx." The document listed various supplies, accompanied by
        pictures and descriptions, such as: "3-9x30mm high quality rifle scopes.
        Proven to be real good in our environment. Sent 100s of them, used in Idlib
        and Halab Very successfully. People loved them and always asking for more.
        Capable to transfer any decent rifle to sniper rifle." Idlib and Halab are cities
        in Syria.

(40)    Between on or about January 19 and February 5, 2013, BAROUDI revised the
        document entitled "available.docx" at least four times and shared and
        attempted to share various versions with T.S., E.S., and S.A.

(41)    On or about January 22, 2013, BAROUDI purchased via eBay: one Level 3A
        IIIA Bullet Proof Vest Interceptor ACU Body Armor Flak Jacket Large, an
        item on the CCL.

(42)    On or about January 24, 2013, BAROUDI purchased via eBay: three
        Panasonic HC-V10 HD Camcorders with Ultra High 63x Optical Zoom - Red
        (HC-V10R).

(43)    On or about January 28, 2013, BAROUDI purchased via eBay: two GSM
        Outdoors CYC-SOL6W 6 Watt 12V Amorphous Solar Panels.

(44)    On or about February 1, 2013, BAROUDI told T.S. that he planned to travel
        on February 15 and that he had approximately $30,000 USD worth of

equipment.  He asked T.S. for advice about his travel reservations and expressed concern about getting caught.

(45)    On or about February 4, 2013, BAROUDI purchased via eBay: one 12 V AC/DC Wind Turbine Generator System 400 W  550 W 650 W 800 W Watt Apollo 550W 12V AC (6 Blades); two Maglula LULA 5.56 mm.223 Loader and Unloader fits 10 20 20 40 Round Mags #24215; three Floor Standing Tripod Monopod for Nikon Camera and Camcorders 40 with carrying bag; three Panasonic HC-V10 HD 70X Optical Zoom SD Camcorders; three 1000W Car USD DC 12V to AC 220V Power Inverter Adapters; five 2.4 LCD Video Inspection Camera snake Pipe Borescope Endoscope TV 1m cables; ten 7.62 x 39 mm Laser Bore Sighter Boresighter Bore Sight Red Dot Sights; and ten .223 5.56x45mm Caliber Cartridge Laser Bore Sighter Boresighter Rifles.

(46)    On or about February 4, 2013, BAROUDI purchased from Gator Trading Post, via Amazon.com: three BTLR CRK STRIPLULA LDR AR-15.

(47)    On or about February 4, 2013, BAROUDI purchased from Shop Three Bees via Amazon.com: seven Butler Creek AK47/GALIL LULA Loaders.

(48)    On or about February 5, 2013, BAROUDI purchased via eBay: five Uniden BC340CRS Desktop Police Scanner, AM, FM, VHF, UHF Clock Radios; eight New Battery Charger for 18650 Rechargeable Li-ion Batteries; nine 13800 Lumen 12 x CREE XM-L T6 LED for (26650/18650) Flashlights; and ten American to European Travel Plug Adapters.

(49)   On or about February 6, 2013, BAROUDI purchased via eBay: one AR500 Body Armor CURVED Plates (Pair) "Comfort Cut," Level III, 10x12, Painted; and five 7.62 x 54R Caliber Cartridge Laser Bore Sighters.

(50)   On or about February 8, 2013, BAROUDI purchased via eBay: one 10pcs Handheld PTT Speaker Microphone 2 PIN FOR KENWOOD Radio; one USMC Digital Marpat Ilbe Arcyteryx Main Field Pack Gen 2 Mint Complete Belt Lid; two 10 pcs wholesale BF-UV5R 2-Way Radios 128CH UHF+VHF DTMF, an item on the CCL; three 9mm Waterproof PS-GL8805 Inspection Cameras; four Panasonic HC-V10 Camcorder - Black HD Video 70x Zoom; and four Dual LED Digital Display Power Current Voltage AMP Meter VA Voltmeter DC-DC 20A, an item on the CCL.

(51)   On or about February 8, 2013, BAROUDI purchased from CJL Enterprize: one CFP-90 Combat Back Pack.

(52)   On or about February 8, 2013, BAROUDI purchased from Missouri Wind & Solar: two Missouri Basic 500 Watt 5 Blade Wind Turbine 12 Volts; and one 800 Watt Missouri Rebel Wind Turbine #MW12PD9.

(53)   On or about February 8, 2013, BAROUDI referenced his upcoming trip and sent a file to T.S. listing the following items in English, along with corresponding text in Arabic:

        5 used bullet proof vests
        2 5 watt solar cells
        4 dc/ac invertor
        15 large flash lights
        5 small flash lights
        7 zapper
        25 walkie talkie
        2 campass

1 gps
10 ispesection camera
15 video camera
30 speed loader
5 hand cuff
10 night vision goggles
100 laser bore sighter
5 range finder
3 bolt assy.
10 knives
3 bipod
5 wind generators
5 radio scanner
50 rifle scopes
20 night vision rifle scopes
800 IsoFloran 40
10 box Propofol Inj 20ML

(54)   On or about February 9 and February 10, 2013, BAROUDI confirmed his travel plans with T.S., stating that he would arrive Sunday at 3 a.m., enter Syria from Rayhaniya, and meet T.S. there.

(55)   From on or about February 15, 2013, to on or about February 17, 2013, BAROUDI traveled with 14 bags of checked luggage, weighing a total of approximately 619 pounds, on commercial flights from LAX to Gaizientep, Turkey.

(56)   On or about February 19, 2013, BAROUDI traveled from Turkey to Syria and transported U.S.-origin goods to Syria.

(57)   On or about March 4, 2013, BAROUDI returned to LAX from Istanbul with only two checked bags.

16

*March 2013 Trip*

(58)   On or about March 13, 2013, BAROUDI purchased via eBay: one ACU Army Survival Gear Tactical Vest Zombie Zombat Kit, magazine pouches and patch.

(59)   On or about March 17, 2013, BAROUDI purchased via eBay: one New Panasonic HC-V10 HD HDMI Camcorder Silver 70X Zoom 31.6mm Wide Angle; one CAA CBS Stock Black w Storage Compartment .223 Rem CBS; three Tactical FN/FAL Picatinny Scope Mounts; three FN/FAL Picatinny Scope Mounts; four NcStar ACU Tactical Vest PVC Heavy Duty Vest Airsoft Military New Vest S/XL; five SVP 2.4" Color LCD Portable Borescope Endoscope Pipe SnakeCam Inspection Cameras; ten .308 Bore Sighter Boresighter Caliber Cartridge Laser Rifles; and five Logitech Wireless Headset H760 With Behind-the-head Design 981-000265, an item on the CCL.

(60)   On or about March 18, 2013, BAROUDI purchased via eBay: two Panasonic HC-V10 HD HDMI Camcorder Black 70X Zoom 31.6mm Wide Angles.

(61)   On or about March 19, 2013, BAROUDI purchased from Wayfair via Amazon.com: ten FN/FAL Quad Rail Mounts.

(62)   On or about March 24, 2013, BAROUDI purchased via eBay: five 7.62 x 54R Caliber Cartridge Laser Bore Sighters; and five 7.62 x 39 mm Laser Bore Sighter Boresighter Bore Sight Red Dot Sights.

(63)    Between on or about March 21 and March 27, 2013, BAROUDI exchanged

emails with D.K. and asked for his assistance entering Turkey the next week

with the following equipment:

1.  5 inspection cameras
2.  8 rifle scopes
3.  10 red dots scopes
4.  3 video cameras
5.  35 assorted spare parts, (stocks, dust covers and bolts)
6.  5 knives
7.  3 computer head sets
8.  6 range finders
9.  Medical supplies ( wounds bandages etc..)
10. 10 laser bore sight
11. 1 protective vest
12. 5 tactical vests
13. 15 speed loaders
14. 4 invertors

(64)    On or about March 28, 2013, BAROUDI purchased from Beach Camera via

Amazon: one Sony DSC-HX300/B DSCHX300V DSC-HX300V Black

Digital Camera 32GB Bundle.

(65)    On or about March 28, 2013, BAROUDI departed LAX on a one-way ticket

to Istanbul with four pieces of checked luggage weighing a total of

approximately 231 pounds.

(All in violation of Title 50, United States Code, Sections 1702 and 1705, and Title 15, Code of

Federal Regulations, Section 746.9.)

## COUNT TWO

(Conspiracy to Defraud the United States)

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of this Indictment are re-alleged and incorporated as if set forth in their entirety.

From at least in our about December 2011 through at least in or about March 2013, the exact dates being unknown to the Grand Jury, defendant AMIN AL-BAROUDI, also known as "Abu al-Jud," who will be first arrested in and first brought to the Eastern District of Virginia, did willfully conspire with others known and unknown to the Grand Jury, to commit offenses against the United States, that is to defraud the United States Department of Commerce and the United States Government by interfering with and obstructing a lawful government function, that is the imposition of sanctions on Syria and the regulation of the export of U.S.-origin goods to Syria, by deceit, craft, trickery, and dishonest means.

(In violation of Title 18, United States Code, Section 371.)

## COUNT THREE

(Unlawful Export of U.S.-Origin Goods to Syria)

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of this Indictment are re-alleged and incorporated as if set forth in their entirety.

On or about February 19, 2013, defendant AMIN AL-BAROUDI, also known as "Abu al-Jud," who will be first arrested and first brought to the Eastern District of Virginia, knowingly and willfully exported and caused to be exported from the United States to Syria U.S.-origin goods, including dual-use goods listed on the Commerce Control List and goods subject to the Export Administration Regulations, without first having obtained the required authorization from the Secretary of State or the Secretary of Commerce, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 50, United States Code, Sections 1702 and 1705, and Title 15, Code of Federal Regulations, Section 746.9.)

## COUNT FOUR

(Unlawful Export of U.S.-Origin Goods to Syria)

THE GRAND JURY FURTHER CHARGES THAT:

Paragraphs 1 through 8 of this Indictment are re-alleged and incorporated as if set forth in their entirety.

On or about April 1, 2013, defendant AMIN AL-BAROUDI, also known as "Abu al-Jud," who will be first arrested and first brought to the Eastern District of Virginia, knowingly and willfully exported and caused to be exported from the United States to Syria U.S.-origin goods, including dual-use goods listed on the Commerce Control List and goods subject to the Export Administration Regulations, without first having obtained the required authorization from the Secretary of State or the Secretary of Commerce, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 50, United States Code, Sections 1702 and 1705, and Title 15, Code of Federal Regulations, Section 746.9.)

### Forfeiture Notice

The violations alleged in Counts One through Four of this Indictment are re-alleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 981 (a)(1)(C), and Title 28, United States Code, Section 2461(c).

As a result of committing the crimes alleged in the Indictment, the defendant herein shall forfeit to the United States any property constituting, or derived from, any proceeds the defendant obtained, directly or indirectly, as the result of committing such violation, including, but not limited to a money judgment in favor of the United States for a sum of money equal to the value of the property constituting, or derived from, any and all proceeds the defendants obtained, directly or indirectly, as a result of the offenses alleged in Counts One through Four of this Indictment.

By virtue of the commission of the felony offense charged in Count One of this Indictment, any and all interest that the defendant has in property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such offense is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

If, as a result of any act or omission of the defendant, the property identified above: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third person; (c) has been placed beyond the jurisdiction of this court; (d) has been substantially diminished in value; or, (e) has been commingled with other property that cannot be subdivided without difficulty; then it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United

States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of said property listed above as being subject to forfeiture.

(In violation of Title 18, United States Code, Section 981 (a)(1)(C) and Title 28, United States Code, Section 2461(c).)

A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
FOREPERSON OF THE GRAND JURY

DANA J. BOENTE
UNITED STATES ATTORNEY

BY: _____
Julia K. Martinez
Assistant United States Attorney

24